IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DARLENE CROUCH, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:06-cv-113 |
| | § | |
| J.C. PENNEY CORPORATION, INC., | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION & ORDER DENYING
PLAINTIFF'S MOTION FOR RECONSIDERATION**

Before the court are the following:

1. Plaintiff's Motion for Reconsideration of Order Granting Partial Summary Judgment and Brief in Support (de # 79);

2. Defendant's Brief in Opposition to Plaintiff's Motion for Reconsideration (de # 80);

3. Plaintiff's Reply Brief in Support of Motion for Reconsideration of Order Granting Partial Summary Judgment (de # 81); and

4. Defendant's Sur-reply Brief in Opposition to Plaintiff's Motion for Reconsideration (de # 82).

Having considered the Motion and the briefing responsive thereto, the court is of the opinion that the Motion should be DENIED.

**I. BACKGROUND**

Plaintiff Darlene Crouch has filed this Motion for Reconsideration on the basis of her contention that the court improperly overlooked two pieces of evidence in granting partial summary judgment to Defendant J.C. Penney Corporation, Inc. Specifically, Crouch would have the court reverse ground based on additional consideration given to Crouch's sworn declaration and an email

sent by Dick Patefield, one of Crouch's supervisors.

In an order signed on September 26, 2007 ("the Order"), the court granted summary judgment as to Crouch's claims for impermissible discrimination under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). The court found that fact issues existed as to Crouch's defamation claims and accordingly denied summary judgment as to those claims. The facts of this case are explained in detail in that order, but a recap of some of those facts is warranted here.

Crouch worked for J.C. Penney for over twenty years before being fired in November of 2005. When she was fired, she was a manager on the weekend team that offered technical support to J.C. Penney stores. Every year between 2001 and 2005, Crouch applied for and was granted FMLA leave so that she could attend to her intermittent bouts with chronic bronchitis. In the summer of 2005, Crouch switched from her usual weekday shift to the weekend shift. In August of 2005, Crouch had scheduled oral surgery to fix a broken tooth. Unfortunately, her bronchitis flared up at around the same time, and her oral surgeon deemed it best that she take antibiotics to kill off the infection before going forward with the surgery. Crouch eventually missed a total of seven days of work in connection with the surgery and antibiotic treatment, far more than she would have missed had her bronchitis not complicated the oral surgery.

Crouch returned to work in late August of 2005 and was immediately counseled about her absences. On September 4, 2005, Crouch emailed her superiors to inform them that the entire oral surgery ordeal should be covered by the FMLA. Prior to this communication, J.C. Penney was unaware that the time off was covered by the FMLA. Crouch had never previously indicated that all seven days were related to her bronchitis, and she presumably discovered that the FMLA was

applicable to all seven days just prior to informing J.C. Penney.

In the weeks after returning to work, Crouch faced an array of criticism. First, she was put on a Development Plan because of her attendance record, her failure to inform J.C. Penney when she intended to make use of her FMLA leave, her lack of professional judgment, and her unprofessional behavior. In October of 2005, Ronald Smith, one of Crouch's coworkers, voiced complaints about being threatened at knifepoint by Crouch and Crouch's propensity to tell sexually-charged jokes and stories of violence committed by members of Crouch's family, intimidating workers on the weekend team. Understandably, these complaints led to an investigation that, in large part, corroborated the details of Smith's complaints. After considering a range of disciplinary action,[1] J.C. Penney decided to terminate Crouch's employment.

Crouch requests that the court construe two pieces of evidence in a light more favorable to her. On August 22, 2005, Patefield sent an email to Patricia Grant, another of Crouch's supervisors, stating with regard to Crouch "[w]e need someone that we can depend upon to show up on weekends." Patefield's email was prompted by an email from Queen Beasley, a coworker of Crouch's, indicating that Crouch was sick on August 20th and 21st. The Beasley email stated only that Crouch was sick and absent from work on those days. Crouch also requests that the court reconsider her sworn declaration, in which she stated "[J.C. Penney employee Lisa] Scott further told me that because I was on a development plan, the decision was made to fire me based on complaints received by JC Penney associates, rather than receiving a verbal or written admonishment."

---

[1] The record indicates that, despite the severity of the charges levied at Crouch, her superior technical abilities warranted discussion of imposing a less severe penalty on her.

## II. LEGAL STANDARD

Motions to reconsider serve a very limited purpose: "allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). A motion for reconsideration is not the proper vehicle to raise arguments that should have been raised before the entry of judgment or to re-urge arguments initially decided against the movant. *Templet*, 367 F.3d at 473. Especially because of the large volume of motions that are submitted to the court, district court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). Reconsideration of a judgment is extraordinary, and is a remedy "that should be used sparingly. *Templet*, 367 F.3d at 473.

## III. DISCUSSION AND ANALYSIS

At issue is Crouch's pursuit of her claims under the FMLA and the ADA. Because her claims are both reliant upon the same evidence and analyzed under the same framework, they will be discussed in tandem. *Richardson v. Monitronics Int'l*, 434 F.3d 327, 333 (5th Cir. 2005); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). Claims under the FMLA and the ADA are evaluated under the familiar *McDonnell Douglas* framework. That test has been stated in the following terms as applied to FMLA retaliation:

> (1) the employee must make a prima facie case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or -- and herein lies the modifying distinction -- (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was a motivating factor

> in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus... The employer's final burden is effectively that of proving an affirmative defense.

*Richardson*, 434 F.3d at 333 (internal citations and quotation marks omitted).

In the Order, this court found that Crouch had failed as to each element of the *Richardson* test. Moreover, the court found that there was sufficient evidence to establish as a matter of law that J.C. Penney would have taken the same action with regard to Crouch, even assuming Crouch was able to create a fact issue as to J.C. Penney's motivations.

In the Order, the court discussed in some detail why the Patefield email is not probative in this case. Crouch's arguments in her Motion for Reconsideration do not alter that analysis. Crouch devotes much of her brief to the argument that the email must be considered because even unintentional discrimination is prohibited under the statutes. This argument misses the point, as it fails to confront the critical distinction between an employer taking action on the basis of poor attendance and an employer taking action on the basis of FMLA retaliation. At the time he sent the email, the only information available to Patefield was that Crouch was absent. Not a single person was aware that Crouch's absence was covered by the FMLA. Therefore, the Patefield email can only be construed as critical of Crouch on the basis of her being absent from work, a perfectly legitimate position for an employer to take. *Richardson*, 434 F.3d at 335. It was not until nearly two weeks later that any person at J.C. Penney was apprised of the applicability of the FMLA to the time she had to take off from work regarding her oral surgery and antibiotic treatment. Crouch has introduced no evidence that this attitude, permissible at the time that it was manifested, ever entered into the discussions of Crouch's fate after its consideration could be perceived to be impermissible. In other words, J.C. Penney's complaints about her absences died off with its receipt of her email of

September 4th. The Patefield email, therefore, can neither be said to constitute direct evidence of impermissible discrimination nor evidence that J.C. Penney's proffered justifications are pretextual.

Crouch also argues that J.C. Penney had an affirmative duty under the statute to investigate her absence to determine whether the FMLA applied. Thus, the argument runs, J.C. Penney should have investigated the circumstances surrounding Crouch's absences once it was aware of them, and it should be held to the knowledge that such an investigation would have revealed. To be sure, "an employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b) (2006); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 976 (5th Cir. 1998). At the time Patefield sent his email, he knew nothing more than that Crouch was absent on August 20-21, 2005 because she was sick. These absences turned out to be connected to Crouch's oral surgery. However, to find that Patefield was required to put together that Crouch's absences for oral surgery were covered by the FMLA would require a degree of clairvoyance that is, quite simply, not imposed on employers by the statute. *Satterfield*, 135 F.3d at 980. It would simply strain the bounds of logic to conclude that Patefiled's email could be evidence of an illicit motivating factor of a concept of which he could not have possibly known. It is for this reason that the email cannot be said to be probative in this case. As the court explained in the Order "[t]hat the August absences were later discovered to have been covered by FMLA transforms neither Patefield's state of mind nor his email of August 22nd into direct evidence of FMLA retaliation. There is no evidence in the record to indicate that the email or the sentiment thereby conveyed ever resurfaced in the discussions surrounding Plaintiff's fate." *Crouch v. J.C. Penney Corp., Inc.*, No. 4:06-cv-113, 2007 WL 2823299, at *7 (E.D. Tex. Sept. 27, 2007).

Crouch also asserts that the court did not properly consider a sworn declaration she has given

in this case.  As stated above, Crouch contends that Lisa Scott informed her that the fact that Crouch had been placed on a Development Plan was the difference between being fired or being subjected to a more forgiving course of disciplinary action.  Crouch claims that FMLA retaliation prompted the institution of the Development Plan, but her declaration does not support this assertion.

The Development Plan was created due to excessive absences, Crouch's failure to inform J.C. Penney when she intended to make use of her FMLA leave, her lack of professional judgment, and her unprofessional behavior.  The first page of the Plan states that she had been absent seven times in the past seven months, a track record outside of the company's guidelines.  Apparently, some of these days were related to her FMLA-covered oral surgery.  However, on page two, only non-FMLA absences are listed.  The section in the Plan related to attendance only expresses criticism of Crouch's failure to provide adequate notice of those times on which she intends to take advantage of FMLA leave.  Nowhere in the Plan is Crouch's exercise of her FMLA rights cited.  The Plan goes on to discuss examples giving rise to the other areas for improvement, and it delineates strategies for Crouch to follow so that she may improve in those areas.  It is clear, therefore, that the Development Plan was not created to punish Crouch for making use of the FMLA.  Though it does cite her attendance as an area for improvement, as noted above, attendance is a legitimate basis upon which employers may make employment decisions.  Notably absent from the Development Plan is any reference to Crouch's use of FMLA leave.

Therefore, when viewed in the light most favorable to Crouch, her declaration fails to create a fact issue.  It matters not whether Lisa Scott told Crouch that the Development Plan tipped the scales in favor of her termination.  The Development Plan was created in response to legitimate concerns of the employer.  J.C. Penney, after coming to the conclusions that Crouch's leadership on

the weekend team was ineffective and that she had pointed a knife at a coworker, considered a range of punishment and decided that harsh action was warranted. There is no evidence in the record to suggest, for instance, that J.C. Penney put additional weight on the existence of the Development Plan because Crouch had taken FMLA leave. Therefore, consideration of that factor in deciding to terminate Crouch, assuming that such consideration occurred, would not have been impermissible under the statute.

## IV. CONCLUSION

All that Crouch has been able to show is that J.C. Penney was poised to take corrective action on the basis of her absence from work, and such action is not proscribed by the statutes. *See Jarjoura v. Ericsson, Inc.*, 266 F.Supp 2d 519, 533 (N.D. Tex. 2003). The evidence is clear that J.C. Penney did not terminate her employment on the basis of her absence from work, and indeed it is clear that J.C. Penney did not rely upon that ground once it was made aware that Crouch's oral surgery and antibiotic treatment were covered by the FMLA. Crouch has failed to create a genuine issue of material fact that she was fired for any reason other than legitimate, nondiscriminatory reasons, and she has been unable to adduce any evidence that those reasons were tainted with the illegitimate factor of FMLA retaliation or ADA discrimination. Based on the foregoing, the court is of the opinion that Crouch's Motion for Reconsideration should be, and hereby is, DENIED.

IT IS SO ORDERED.

**SIGNED this the 4th day of February, 2008.**

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE