IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DARLENE CROUCH, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:06-cv-113 |
| | § | |
| J.C. PENNEY CORPORATION, INC., | § | |
|     Defendant. | § | |

## ORDER GRANTING SUMMARY JUDGMENT AS TO PLAINTIFF'S DEFAMATION CLAIM

Before the court are the "Plaintiff's Response to Defendant's Trial Brief and Motion for Reconsideration" (de # 105) and the "Defendant's Reply Brief to Plaintiff's Response to Defendant's Trial Brief and Motion for Reconsideration" (de # 108). Though the Defendant has not technically filed a motion for reconsideration, in its prior Trial Brief (de # 87), it did request the court to revisit its decision to deny summary judgment as to the Plaintiff's defamation claim. Based on that request, the responsive briefing, and the applicable law, the court is of the opinion that the request should be GRANTED.

### I. BACKGROUND

On March 16, 2006, Darlene Crouch filed this lawsuit against J.C. Penney Corporation alleging federal causes of action based on the Family and Medical Leave Act ("FMLA), the Employee Retirement Income Security Act ("ERISA"), and the Americans with Disabilities Act ("ADA") (collectively, the "employment claims") and a state law cause of action for defamation.

On September 26, 2007, the court signed an order granting summary judgment in favor of J.C. Penney as to the employment claims. The court found that the evidence created issues of fact as to Crouch's defamation claim and therefore denied summary judgment as to that claim. *Crouch*

*v. J.C. Penney Corp.*, No. 4:06-cv-113, 2007 WL 2823299, at \*9 (E.D. Tex. Sept. 27, 2007). The court signed an order on February 4, 2008 denying Crouch's Motion for Reconsideration of the September 27 order. J.C. Penney now asks the court to reconsider its denial of summary judgment as to Crouch's defamation claim. The parties and the court are well aware of the facts of the case as recited in the September 26 order, so the court will not recite them further.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION AND ANALYSIS

To prevail on a claim of defamation, a plaintiff who is not a public figure must prove that the defendant negligently published a defamatory statement about the plaintiff. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). "A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.). Defamatory statements are "published" if they are communicated to a third party capable of

understanding their defamatory connotation and in such a way that the third party did so understand. *Id*.

An employer has a qualified privilege that defeats defamation liability for "communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). The privilege protects those "communications [that] pass only to persons having an interest or duty in the matter to which the communications relate." *Id*. Even if made during the course of such an investigation, a defamatory statement that is motivated by actual malice dissolves the qualified privilege. *Id*. "A statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Id*. For actual malice to nullify the qualified privilege, the declarant must have harbored that state of mind at the time of publication. *Austin*, 118 S.W.3d at 496.

**A. Ron Smith's Accusations**

Crouch partially rests her defamation claim on accusations by Ron Smith that she threatened him with a knife, acted rude and unprofessionally and told sexually oriented jokes. Smith, who is not a party to this action, made the accusations to Patricia Grant who initiated an investigation into the veracity of the accusations. Even assuming that these statements are false and defamatory, J.C. Penney would be liable for them only if Crouch can show that they were made "within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). It should be noted that the qualified privilege is inapplicable to Smith's statements because the privilege applies only to the investigation "*following* a report of employee wrongdoing." *Randall's Food Mkts.*, 891 S.W.2d at 646 (emphasis added).

Upon reconsideration, the court cannot divine how a lie told by Smith (if he were telling the truth, the statements would not be defamatory in the first place) to J.C. Penney about Crouch could possibly be "in furtherance of the employer's business." *Minyard Food Stores*, 80 S.W.3d at 577. Crouch argues that if a motivating factor of Smith's allegations was to secure a new, more agreeable manager so as to effectuate a more efficient and cohesive workplace, that he was acting in part for J.C. Penney's benefit, and thus that his statements were made within the scope of his employment.

From Crouch's history of employment with J.C. Penney of over twenty years, one is entitled to infer managerial satisfaction with her work performance. Indeed, the summary judgment evidence makes several allusions to Crouch's exemplary technical skills. If Smith lied for the purpose and with the effect of J.C. Penney firing Crouch and hiring a new manager, personnel discretion will have been stripped from the agents vested with making those decisions. Decisions to hire managers will have been effectively made based on the personal preferences of the very employees who are to be managed. Assuming that Smith was lying, a long history of satisfactory job performance was cast aside in favor of the desires, imagination, and audacity of a subordinate. Such an inversion of corporate decision-making can hardly be said to further the interests of anyone other than a rogue employee. Thus, Crouch's position, even if proven at trial, cannot support a finding that Smith was acting for J.C. Penney's benefit.

In addition, when, pursuant to a company policy, an employee reports another employee for wrongdoing, the report will always have the effect of and be motivated, at least in part, by quelling some sort of workplace acrimony. This is true whether the report results in the hiring of new personnel, some less radical disciplinary action, or a determination that no wrongdoing occurred. Thus, under Crouch's theory, *any* report of employee wrongdoing exposes the employer to liability

for defamation. This is a policy that is clearly untenable and, more importantly, not counseled by Texas law. *Minyard Food Stores*, 80 S.W.3d at 579. Under any view of Smith's allegedly defamatory comments, they were not made within the scope of his employment. Therefore, the court concludes as a matter of law that Crouch has adduced no evidence that Smith was acting in the course and scope of his employment so as to impute liability to J.C. Penney.

**B. Qualified Privilege**

Texas law places the burden of proof at trial on the plaintiff to show that the qualified privilege does not apply because either a defamatory statement was made with actual malice or that the employer communicated a defamatory statement to someone who did not have "an interest or duty in the matter to which the communications relate." *Randall's Food Mkts.*, 891 S.W.2d at 646; *Austin*, 118 S.W.3d at 496; *See Free v. American Home Assurance Co.*, 902 S.W.2d 51, 55 (Tex. App.—Houston [1st Dist.] 1995, no writ.).

Therefore, unlike in a summary judgment proceeding in a Texas court, Crouch bears the burden in federal court to produce evidence sufficient to create a genuine issue of material fact as to the viability of J.C. Penney's qualified privilege defense at summary judgment. *Duffy v. Leading Edge Products., Inc.*, 44 F.3d 308, 314 (5th Cir. 1995); *Conticommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 443 (5th Cir. 1995); *see Burch v. Coca-Cola Co.*, 119 F.3d 305, 325 (5th Cir. 1997).

The summary judgment evidence proffered by Crouch falls short of establishing a genuine issue of material fact as to the existence of actual malice. Crouch bases her argument that the statements were republished with actual malice during the J.C. Penney investigation on three circumstances. First, she argues that because there was not an eyewitness to the knife incident, any republication of that accusation was made with actual malice. (Pl.'s Resp. to Mot. for Summ. J. 26.)

Crouch ignores the fact that that allegation was corroborated by her own statements during the course of the investigation. *Crouch*, 2007 WL 2823299, at *6.

Crouch also points to deposition testimony that Smith was known to be a troublemaker and that Grant and Lisa Scott initially were skeptical as to the allegations. (Pl.'s Resp. at 26.) These factors were considered during the course of the month-long investigation, which was conducted so as to minimize the potential for slandering Ms. Crouch's name. (Def.'s Mot. for Summ. J. Ex. 9, Scott Dep. 177:24-179:5.) In addition, Crouch has presented testimony that some coworkers enjoyed working with Crouch and that the type of behavior complained of would have been out of her character. (Pl.'s Supp. Resp. to Mot. for Summ. J. 2-5.)

Implicit in Texas qualified privilege jurisprudence is a recognition that employers have a responsibility to investigate wrongdoing. Initial doubts are to be expected by the very nature of a report of employee *wrong*doing. Yet, generating an investigative model in response to such complaints requires a frank discussion as to the nature of the alleged wrongdoing. Those discussions, which are essential to responsibly reaching an ultimate determination, must be protected by the qualified privilege for the qualified privilege to provide any meaningful protection.

The resulting investigation should, and the investigation at issue did, consider the reasons that create these initial doubts in addition to the information unearthed in the course of the investigation. Crouch essentially argues that initial managerial doubt defeats the qualified privilege. This argument, if accepted, would severely chill corporate investigations, and it is contrary to Texas law.

Taken together, the evidence cannot establish actual malice on the part of J.C. Penney employees existing *at the time of publication* of the allegedly defamatory statements. None of it

indicates actual malice existing at the time J.C. Penney republished Smith's allegations. By the time the statements were republished in the various drafts of the corrective action reports, the initial skepticism had been washed away by the findings of the investigation. Thus, Crouch is left without any evidence to create a fact issue on the issue of actual malice.

Crouch also argues that, during the course of its investigation, J.C. Penney republished the statements to persons without an interest in the matter. J.C. Penney argues that Crouch has been unable to link those persons' knowledge of the allegations to J.C. Penney management. Thus, the argument continues, Crouch cannot prove excessive republication.

Texas law is not abundantly clear as to the specificity of the showing required to properly connect defamatory statements to a defendant. *Compare Abbott v. Pollock*, 946 S.W.2d 513, 520 (Tex. App.—Austin 1997, pet. denied) *with Hardwick v. Houston Lighting & Power*, 881 S.W.2d 195, 198 (Tex. App.—Corpus Christi, writ dism'd w.o.j.); *see also Garrett v. Celanese Corp.*, No. 3:02-CV-1485-K, 2003 WL 22234917, at *5 (N.D. Tex. Aug. 28, 2003) (applying Texas law). However, it is clear that some connection must be shown to establish that the defendant is indeed the source of the allegedly defamatory statements. In the absence of proof of at least some of the factual circumstances surrounding the republication, nothing distinguishes the chatter from "unauthorized gossip," which is insufficient to defeat the qualified privilege. *Danawala v. Houston Lighting & Power*, 14 F.3d 251, 255 (5th Cir. 1993).

And that is essentially what Crouch has proffered. In his deposition, Dick Patefield, a J.C. Penney employee involved in the investigation, indicated that a number of people with knowledge of the allegations had no reason to know about them. What Patefield's testimony does not address is where those individuals learned of the allegations. Without as much as an allegation to that effect,

Crouch can establish no more than her unfortunate role as a subject of unauthorized gossip.

In addition, Crouch offers the deposition of Pam Crookall, another J.C. Penney manager. Crookall did not take part in the investigation. Crookall testified that she knew about the allegations surrounding Crouch but that she was not sure as to the source of her knowledge. (Pl.'s Resp. Pl.'s App. 45, Crookall Dep. 9:10-9:19) She also stated that she thought she heard it from a manager. (*Id*.) The testimony of Crookall fails to establish excessive publication for the same reasons that Patefield's testimony does. Crouch is thus left without any evidence to establish that the defamatory communications passed from J.C. Penney to anyone who was without an "interest or duty in the matter to which the communications relate." *Randall's Food Mkts.*, 891 S.W.2d at 646.

## IV. CONCLUSION

Based on the foregoing, the court concludes that Crouch is unable to demonstrate a genuine issue of material fact as to whether Smith's complaints were made during the course and scope of his employment with J.C. Penney. The court also concludes that Crouch is unable to establish a genuine issue of material fact as the validity of J.C. Penney's defense of qualified privilege. Crouch is thus left without a manner of connecting J.C. Penney to any defamatory remarks about her that may have been made. The court is therefore of the opinion that the remainder of the "Defendant's Amended Motion and Brief in Support of Summary Judgment" (de # 34) should be, and hereby is, GRANTED.

IT IS SO ORDERED.

**SIGNED this the 18th day of March, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE